**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JESSE JAMES                           CIVIL ACTION NO. 16-0448

VERSUS                                JUDGE S. MAURICE HICKS, JR.

MRC RECEIVABLES CORP., ET AL.         MAGISTRATE JUDGE HORNSBY

### MEMORANDUM RULING

Before the Court is a Rule 12(b)(6) Motion to Dismiss filed by Defendants, MRC Receivables Corp. ("MRC"), Midland Funding, LLC ("Midland Funding"), Encore Capital Group, Inc. ("Encore"), and Midland Credit Management, Inc. ("MCM") (collectively, "Midland"). See Record Document 8. Midland seeks to dismiss Plaintiff Jesse James' ("James") claims, in whole or in part, for failure to state a claim due to the doctrine of preemption and the applicable statute of limitations. For the reasons contained herein, Midland's Motion is **GRANTED IN PART** and **DENIED IN PART**.

### FACTUAL AND PROCEDURAL BACKGROUND

Sometime prior to November 26, 2012, Midland filed a lawsuit against James in Louisiana state court to collect an outstanding debt on Account #854702*** (the "Account"). See Record Document 1-1 at 6. James disputed the debt on the Account through legal pleadings filed in the state court lawsuit, which was dismissed "without prejudice." See id. For "unknown reasons and unknown to [P]laintiff," Midland maintained the Account and reported James' credit information to credit reporting agencies ("CRAs"), despite James continuing to dispute the Account. See id. Following dismissal of the state court lawsuit, James, through legal counsel, lodged a formal, written dispute to all national CRAs, as well as Midland, dated November 26, 2012. See id. at 7. Midland allegedly also

received an Account dispute from the CRAs (an "E-OSCAR") around this time based on the contents of James' letter. See id. After receiving notice of the dispute, Midland allegedly failed to properly investigate the Account and has continued to inaccurately report the Account information to the CRAs monthly since 2012. See id. at 6-8. James alleges he "was not notified and was unaware" of Midland's acts until "recently." Id. at 6. James claims that Midland's actions were a "substantial factor" in causing damage to his credit rating. See id. at 9.

On March 1, 2016, James commenced the instant action in the First Judicial District Court of Caddo Parish, Louisiana, which was removed to this Court pursuant to 28 U.S.C. § 1331. See Record Document 1. Based on the foregoing, James claims that Midland violated Section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA") as "furnishers of information," as well as unspecified provisions of the Fair Debt Collection Practices Act ("FDCPA") as "debt collectors." See Record Document 1-1 at 12-14. James' state law claims for negligence, defamation, invasion of privacy and negligent or intentional infliction of emotional distress all arise from the same allegations. See id. at 11-12.

Midland filed the instant Motion to Dismiss on April 11, 2016 seeking to dismiss James' claims, in whole or in part, for failure to state a claim due to the doctrine of preemption and the applicable statute of limitations. See Record Document 8. James opposed the Motion on April 27, 2016, arguing his FCRA and FDCPA claims were not time-barred and his state law claims were not preempted by the FCRA. See Record Document 18. Midland filed its reply memorandum on May 6, 2016. See Record Document 24. Thus, this matter is fully briefed and ripe for decision.

**LAW AND ANALYSIS**

I.      **Pleading Standards and the Rule 12(b)(6) Standard**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-556, 127 S.Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-679, 129 S.Ct. at 1949. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S.Ct. at 1966.

Where "a successful affirmative defense appears clearly on the face of the pleadings," the complaint fails to state a viable claim for relief. See Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986). Thus, if a plaintiff's state law claims are preempted by federal law, or where a plaintiff fails to plead his claims under Iqbal and Twombly, dismissal is required. See Billups v. Retail Merchs. Ass'n, 620 Fed.Appx. 211, 213 (5th Cir. 2015) (affirming dismissal of state law claims that were preempted by FCRA and couched as "conclusory statements"). Furthermore, a Rule 12(b)(6) motion to dismiss for failure to state a claim is the proper procedural device to raise a statute of limitations defense. See Bowers v. Nicholson, 271 Fed.Appx. 446, 449 (5th Cir. 2008). A "motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint." Potier v. JBS Liberty Sec., Inc., 2014 U.S. Dist. LEXIS 151271, *6 (W.D. La. 2014).

## II.    Analysis

### A.  Fair Credit Reporting Act Claims

A claim under the FCRA must be brought within the earlier of: (i) two (2) years after the date of discovery by the plaintiff of the violation; or (ii) five (5) years after the date on which the violation that is the basis for such liability occurs. See 15 U.S.C. § 1681p. The facts alleged in the Complaint invoke the two (2) year limitations period. This period "begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation." Mack v. Equable Ascent Fin., L.L.C., 748 F.3d 663, 665-666 (5th Cir. 2014). Stated differently, the general federal discovery rule applies to the FCRA's two (2) year period, see id., which "commences when the aggrieved party has either knowledge of the violation or notice of facts which,

in the exercise of reasonable diligence, would have led to actual knowledge thereof." McCune v. United States DOJ, 592 Fed.Appx. 287, 291 (5th Cir. 2014), quoting Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir. 1988). "[A] claimant may be charged with constructive notice of the relevant facts if, in the exercise of due diligence, he should have acquired actual knowledge of the latter (notice of facts)." McCune, 592 Fed.Appx. at 291.

Midland contends that the two-year statute of limitations began to run in November 2012, when James knew of Midland's alleged false reports to the CRAs and retained counsel to draft a dispute letter. See Record Document 8-1 at 15. James alleges that he "was not notified and was unaware nor could he have known" of his potential FCRA claims against Midland "until recently." Record Document 1-1 at 6 and 8. The Court finds James' argument unavailing. James stated in his petition:

> Prior to November 26, 2012, Midland filed a lawsuit against Plaintiff … Following the dismissal of the Midland lawsuit, Plaintiff, through counsel, lodged a formal, written dispute to all of the national [CRAs] and to Midland as well. That letter was dated November 26, 2012. The November 26, 2012 [letter] explained to the [CRAs] and Midland … that Plaintiff did not owe Midland anything and that the [Account] was not Plaintiff's account and that Midland was wrongly pursuing Plaintiff in credit reportings.

Record Document 1-1 at 6-7.

James was aware of the lawsuit filed prior to 2012 to collect on the Account that is the subject of his FCRA claims. He retained counsel to draft a dispute letter regarding the Account on November 26, 2012. The letter acknowledged that James was aware that Midland was reporting the Account to the CRAs and it was appearing on his credit report. Accordingly, James had constructive knowledge, if not actual knowledge, of "the facts that [gave] rise to a claim" under the FCRA by at least November 26, 2012. See Mack, 748 F.3d at 665-666.

A recent district court case within the Fifth Circuit dealt with almost identical facts as the instant matter and found the plaintiff had constructive notice. In <u>Handawy v. Bank of Am., N.A.</u>, 2018 WL 453912, *4 (E.D. Tex. 2018), the court granted a bank's motion to dismiss finding plaintiff's FCRA claims were time-barred because two years had passed since plaintiff discovered the violations. <u>See id.</u> Although the plaintiff contended he was not aware of the alleged FCRA violations until a later time, the court looked to the plaintiff's complaint which stated:

> Plaintiff therefore retained First Stone Credit Counseling ("FSCC") in August 2012 to clear up his credit by requesting Bank of America to report the true condition of Bank of America debt, that Plaintiff had recognized the debt as a secured debt and was during and after bankruptcy making payments currently as required. On October 20, 2013, FSCC sent requests to the three (3) credit reporting agencies to dispute the Bank of America report of Plaintiff's debt....

<u>See id.</u> The court ruled that plaintiff knew of the bank's alleged false reports "as early as August." <u>See id.</u>

In accordance with the Court's reasoning <u>supra</u> and the decision in <u>Handawy</u>, James' FCRA claims based on Midland's alleged conduct prior to March 1, 2014 – the retroactive date of the two year "discovery" limitation period – are time-barred under Section 1681p(1). However, when a republication of credit information results in a new denial of credit, it constitutes a distinct harm and gives rise to a cause of action that is separate from that which arose from the original publication of credit information. <u>See Handawy</u>, 2018 WL 453912 at *4, <u>citing</u> <u>Young v. Equifax Credit Info. Servs., Inc.</u>, 294 F.3d 631, 635 (5th Cir. 2002). Therefore, James' FCRA claims that pertain to the Account that were reported, disputed, verified, or republished after March 1, 2014 are not barred by the two-year limitation period.

### B. Fair Debt Collection Practices Act Claim

Midland also moves to dismiss James' FDCPA claims occurring prior to March 1, 2015, arguing they are time-barred pursuant to 15 U.S.C. § 1692k(d). <u>See</u> Record Document 8-1 at 14. James contends each and every credit reporting made to each CRA constitutes a separate and distinct action which requires its own statute of limitations analysis and that Section 1692k(d) is subject to tolling exceptions. <u>See</u> Record Document 16 at 16-17. Alternatively, James alleges in his opposition that Midland's violations should be deemed a "continuing violation." <u>See id</u>. at 17. In response, Midland argues the discovery rule is not applicable to FDCPA claims in the Fifth Circuit; but even if the discovery rule is applied, James' claims would still be time-barred. <u>See</u> Record Document 24 at 18-19.

First, James argues Midland violated the FDCPA "repeatedly by continuing to report, monthly, that [P]laintiff owe[d] an alleged balance on the [Account];" therefore, its acts should be classified as a "continuing violation." Record Document 18 at 17. However, most courts have confined such an application of the continuous violation rule to the employment discrimination context.[1] <u>See</u> <u>Arvie v. Dodeka, LLC</u>, 2010 WL 4312907, *10 (S.D. Tex. 2010), <u>citing</u> <u>Schaffhauser v. Citibank (South Dakota) N.A.</u>, 340 Fed.Appx. 128, 131 (3d Cir. 2009) ("Generally, our decisions have limited the continuing violation doctrine to the employment discrimination context. We decline to extend the doctrine to

---

[1] In support of his argument, James states, "The court in <u>Sullivan v. Equifax, Inc.</u>, 2002 WL 799856, *4 (E.D. Pa. 2002), specifically found that the continuing violation concept can be applied to credit reporting made by the debt collector." Record Document 18 at 17, n. 12. However, the <u>Sullivan</u> court simply ruled that plaintiff's allegations of continuous violations were sufficient to establish they occurred within the limitations period.

the circumstance of this [FDCPA] case."). James' "continuing violation" argument is unavailing.

Next, James contends each and every credit reporting made to each CRA constitutes a separate and distinct action which requires its own statute of limitations analysis. <u>See</u> Record Document 18 at 17. James is correct. When faced with this situation, "The vast majority of federal cases" have found that "[f]or statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis." <u>Arvie</u>, 2010 WL 4312907 at *9, <u>quoting</u> <u>Solomon v. HSBC Mortg. Corp. (USA)</u>, 2010 WL 3069699, *3 (10th Cir. 2010); <u>see also</u> <u>Purnell v. Arrow Fin. Servs., LLC</u>, 303 Fed.Appx. 297, 301-02 (6th Cir. 2008); <u>Brandon v. Fin. Accounts Servs. Team, Inc.</u>, 701 F.Supp.2d 990, 995 (E.D. Tenn. 2010); <u>Craig v. Meyers</u>, 2009 WL 3418685, *4 (S.D. Ohio 2009); <u>Ehrich v. RJM Acquisitions LLC</u>, 2009 WL 4545179, *2 (E.D. N.Y. 2009); <u>Jones v. Baugher</u>, 689 F.Supp.2d 825, 829-30 (W.D. Va. 2010); <u>McCorriston v. L. W.T., Inc.</u>, 536 F.Supp.2d 1268, 1272 (M.D. Fla. 2008); <u>Ortiz v. Accounts Receivable Mgmt.</u>, Inc., 2010 WL 547910, *2 (S.D. Fla. 2010); <u>Puglisi v. Debt Recovery Solutions, LLC</u>, 2010 WL 376628, *3 (E.D. N.Y. 2010). The Court adopts the majority approach. The Court will now analyze whether each of James' FDCPA claims are barred by the statute of limitations.

Section 1692k(d) of the FDCPA states that "an action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." Thus, the FDCPA has a one-year statute of limitations. James filed the instant action on March 1, 2016. Midland argues it is immaterial at what point James allegedly became aware of the

violations. See Record Document 8-1 at 14, citing Brandon v. Fin. Accounts Serv. Team, Inc., 701 F.Supp.2d 990, 996 (E.D. Tenn. 2010) ("As the text of the statute of limitations in the FDCPA indicates, the focus is the date 'on which the violation occurs,' 15 U.S.C. § 1692k(d), not on the date on which the violation is known."). Based on Midland's argument, James' FDCPA claims prior to March 1, 2015 are time-barred. Conversely, James argues that because the one-year statute of limitation is not jurisdictional, it is subject to tolling exceptions. See Record Document 18 at 16, citing Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323 (7th Cir. 2000); Mangum v. Action Collection Serv., Inc., 575 F.3d 935 (9th Cir. 2009). Although James does not specify which tolling exceptions apply in the instant matter, after reading his petition and response, it seems he asserts that either the discovery rule or equitable tolling should apply to extend the limitations period until he knew or reasonably should have known of Midland's violations. See Record Document 18 at 16-17. The Court will address whether the discovery rule applies first.

The Supreme Court has not adopted a uniform discovery rule. See TRW Inc. v. Andrews, 534 U.S. 19, 27, 122 S.Ct. 441 (2001). However, when the statute creating the cause of action specifies a statute of limitations, the Supreme Court has looked to the statutory language and used rules of construction to determine whether the discovery rule should be recognized as an exception to limitations. See id. (applying the rule that "when Congress enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent").

James does not cite any Fifth Circuit authority to support his assertion that the discovery rule should apply. In fact, the Fifth Circuit has repeatedly declined to address

whether a discovery rule applies to Section 1692k(d). See Serna v. Law Office of Joseph

Onwute, P.C., 732 F.3d 440, 449 n.12 (5th Cir. 2013) ("[W]e need not and do not decide

whether a discovery rule applies to § 1692k(d)'s one-year limitations period."). However,

applying previous rulings of the Fifth Circuit to the instant matter, the Court finds the

discovery rule is not applicable.[2] As the District Court in Arvie, 2010 WL 4312907 at *12,

explained:

> Under TRW Inc., "a discovery rule does not apply to statutes that key the
> start of the limitations period to 'the date of the occurrence of the violation.'"
> Archer v. Nissan Motor Acceptance Corp., 550 F.3d 506, 509 (5th Cir. 2008)
> (holding that discovery rule does not apply to the Equal Credit Opportunity
> Act, 15 U.S.C. § 1691, because its statute of limitations uses the "date of
> the occurrence of the violation" language). The FDCPA statute of limitations
> runs "one year from the date on which the violation occurs." Under Archer,
> this language would weigh against applying the discovery rule to the
> FDCPA.

Following the rulings in Archer and Arvie, James' FDCPA claims based on Midland's

alleged violations occurring prior to March 1, 2015 are barred by the statute of limitations

unless he is entitled to equitable tolling.

Equitable relief should only be used sparingly. See Deaville v. Capital One Bank,

425 F. Supp. 2d 744, 752 (W.D. La. 2006), citing Irwin v. Dep't of Veterans Affairs, 498

U.S. 89, 96, 111 S.Ct. 453, 457 (1990). "'Equitable tolling applies principally where the

plaintiff is actively misled by the defendant about the cause of action or is prevented in

---

[2] Assuming *arguendo* a discovery rule applies, James' FDCPA claims prior to March 1, 2015 are time-barred. James' FDCPA claim is premised solely on Midland's alleged failure to investigate and accurately report his Account information to the CRAs. See Record Document 1-1 at 13-14. As discussed supra, James was put on notice of his FDCPA claims in November 2012 when he obtained counsel to write the letter disputing the Account on his credit report. The Fifth Circuit has firmly held that the limitations period begins when a consumer is put on "constructive notice" of the contents of his credit report. See Wagner v. BellSouth Telecommunications, Inc., 520 Fed. Appx. 295, 298 (5th Cir. 2013); see also Deaville, 425 F.Supp.2d at 752 (holding the statute of limitations began to run when plaintiff had constructive notice of his claim upon hiring counsel to write a dispute letter). Therefore, even if the discovery rule were to apply, James had constructive notice in November 2012 and the statute of limitations began.

some extraordinary way from asserting his rights.'" <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>quoting</u> <u>Rashidi v. American President Lines</u>, 96 F.3d 124, 128 (5th Cir. 1996), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>see also</u> <u>Ramirez v. City of San Antonio</u>, 312 F.3d 178, 183 (5th Cir. 2002) ("[E]quitable tolling may be appropriate when 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'").

James alleges he was "not notified and unaware of [Midland's] acts … until recently. Plaintiff was reasonably led to believe that [Midland] terminated its collection activities…." Record Document 1-1. Construing this allegation, along with the entire petition, most favorably to the plaintiff, it is plausible that Midland misled James into believing it had terminated its collection activities when in reality it had not. Accordingly, the Court finds dismissing James' FDCPA claims on this basis and at this time premature. <u>See</u> <u>Teemac v. Henderson</u>, 298 F.3d 452, 457 (5th Cir. 2002) ("[R]aising the limitations defense in a motion to dismiss may easily be premature because facts tolling the running of the statute of limitations do not necessarily appear in the complaint."). James is entitled to put forth evidence to support his claims despite Midland's invocation of the statute of limitations.

### C. State Law Claims

James has alleged state law claims against Midland for negligence, defamation, invasion of privacy, and negligent or intentional infliction of emotional distress. <u>See</u> Record Document 1-1 at 11-12. James' state law claims are premised on: (1) the alleged inaccurate reporting of his credit information by Midland to CRAs; or (2) the alleged handling and investigation of his Account by Midland after receiving notice of James'

dispute of same and subsequent E-OSCAR. See id. As Midland argues, which James

does not dispute, the state law claims are entirely premised on matters governed by 15

U.S.C. § 1681s—2(b). See Record Document 8-1 at 8. As such, Midland argues the

FCRA preempts all of James' state law claims under two preemption provisions: (1)

Section 1681h(e) since James has not adequately pled malice or willful intent; and/or (2)

Section 1681t(b)(1)(F). See id. at 8-11. James argues his state claw claims are not

preempted because (1) Section 1681h(e) does not apply to "furnishers of information,"

and even if it does he has sufficiently pled malice; and (2) Section 1681t(b)(1)(F) does

not operate to preempt "anything other than mini-credit reporting acts enacted by states

(statutory laws)." Record Document 18 at 20-39.

The FCRA contains two preemption provisions that are relevant to this case:

Section 1681h(e), which provides qualified immunity to furnishers of credit information,

and Section 1681t(b), which outlines absolute immunity from certain types of state law

claims. See Meisel v. USA Shade & Fabric Structures Inc., 795 F.Supp.2d 481, 486 (N.D.

Tex. 2011), citing DiPrinzio v. MBNA America Bank, N.A., 2005 WL 2039175, *3 (E.D.

Pa. 2005). Section 1681h(e) states:

> Except as provided in sections 1681n and 1681o of this title, no consumer
> may bring any action or proceeding in the nature of defamation, invasion of
> privacy, or negligence with respect to the reporting of information against
> any consumer reporting agency, any user of information, or any person who
> furnishes information to a consumer reporting agency, based on information
> disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based
> on information disclosed by a user of a consumer report to or for a consumer
> against whom the user has taken adverse action, based in whole or in part
> on the report except as to false information furnished with malice or willful
> intent to injure such consumer.

Section 1681t(b)(1)(F), the subsection relevant to this case, provides:

No requirement or prohibition may be imposed under the laws of any State—

(1) with respect to any subject matter regulated under—

* * *

(F) section 1681s—2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply (to specified provisions of the Massachusetts Annotated Laws or the California Civil Code).

"While Section 1681t(b)(1)(F) appears to preempt all state law claims, Section 1681h(e) appears to permit a defamation action in situations involving malice or willful intent to injure."[3] Floyd v. Wells Fargo Home Mortg. Co., 848 F.Supp.2d 635, 643 (E.D. La. 2012). Midland argues James has not alleged any specific facts in support of his conclusory statements that Midland acted with willful intent to injure his reputation. See Record Document 8-1 at 12. However, James specifically alleged:

> 24.
> For unknown reasons and unknown to Plaintiff, Midland/MRC has persisted in a campaign of monthly credit reportings, after 2012, to the national consumer reporting agencies and, each such reporting to each consumer reporting agency, represented an act of debt collection and a false and defamatory communication, made with malice and willful intent to harm Plaintiff's credit, property rights therein, reputation and standing in the community.

***

---

[3] The Court notes James' argument that Section 1681h(e) does not apply to "furnishers of information." However, since Whitesides v. Equifax Credit Info. Servs., Inc., 125 F.Supp.2d 807 (W.D. La. 2000) (case cited heavily by James in support of his argument that Section 1681h(e) "is not actually a preemption provision" and does not preempt claims arising out of disclosures by furnishers of information to CRAs), the Fifth Circuit has repeatedly applied Section 1681h(e) to preempt state law claims against alleged furnishers of information for disclosures to CRAs to the extent the claims do not sufficiently allege malice or willfulness. See Billups v. Retail Merchants Assoc., Inc., 620 Fed.Appx. 211 (5th Cir. 2015); Morris v. Equifax Information Services, LLC, 457 F.3d 460, 471-72 (5th Cir. 2006); Young, 294 F.3d at 638. Additionally, the express language of Section 1681h(e) contemplates its application in favor of furnishers of information. See Floyd, 848 F.Supp.2d at 644, n. 8 ("The Court, however, notes that Section 1681h(e) explicitly provides for a cause of action against furnishers of information, at least in some circumstances. See 15 U.S.C. § 1681h(e) (providing that no consumer can bring an action for defamation "with respect to the reporting of information *against* any consumer reporting agency, any user of information, or *any person who furnishes information to a consumer reporting agency*" pursuant to certain sections, unless certain conditions are met")) (emphasis in original).

The repeated receipt of disputes from plaintiff, coupled with the same disputes contained in legal pleadings resulting is dismissals of the aforementioned state court lawsuits, as well as the failures to investigate the account and collection files at any time, all show support for the conclusion that [Midland's] actions and omissions aimed at damaging and harming plaintiff were intentional, malicious, reckless and with willful intent to injure plaintiff."

These facts, if true, would be sufficient to support a finding that Midland willfully intended to harm James. Since James alleges willful intent on the face of his amended petition, his state tort claims are not preempted by Section 1681h(e) of the FCRA.[4] Thus, the question is whether Section 1681t(b)(1)(F) completely preempts James' state law claims, even though the allegation of malice saves those claims from preemption under section 1681h(e).

The question on how to reconcile the broad preemption language of Section 1681t(b)(1)(F) has not been addressed by the Fifth Circuit and district courts throughout the country are divided on the answer. However, three approaches have emerged: (1) the "total preemption" approach; (2) the "temporal" approach; and (3) the "statutory" approach. See Meisel, 795 F.Supp.2d at 489. Midland argues in favor of the "total preemption" approach, while James urges the Court to adopt the "statutory" approach. See Record Document 8-1 at 9-10; Record Document 18 at 34-39. The Court agrees with

---

[4] In its reply memorandum, Midland argues James' negligence and negligent infliction of emotional distress claims should be dismissed because they cannot withstand Section 1681h(e) preemption because neither claim contemplates that a defendant act with "malice" or "willfulness." See Record Document 24 at 10, citing Clark v. Saxon Mortg. Co., 2011 U.S. Dist. Lexis 74052, *14 (M.D. La. 2012); Johnson v. Citimortgage, Inc., 351 F.Supp.2d 1368, 1379-80 (N.D. Ga. 2004). However, the Court will not address this argument since it was raised for the first time in Midland's reply memorandum. See Weems v. Hodnett, 2011 WL 2731263, at *1 (W.D. La. 2011) ("[A]rguments raised for the first time in a Reply brief are waived.") (quoting Jones v. Cain, 600 F.3d 527, 541 (5th Cir. 2010)). Midland is free to re-urge this argument at the summary judgment stage.

James and considers the "statutory" approach the best of the three predominant approaches.

The "temporal" approach, applies Section 1681t(b)(1)(F)'s categorical bar only to those claims that arise after a furnisher receives notice of a dispute, and applies Section 1681h(e) to those state law claims arising before notice. See Meisel, 795 F.Supp.2d at 490. However, this approach has recently come under scrutiny as courts have found it is not supported by the language of the FCRA, and also would afford a furnisher of information more protection from liability for acts committed after receiving notice of dispute, an oddity courts find troubling. See id.; see also Johnson v. Citimortgage, Inc., 351 F.Supp.2d 1368, 1375 (N.D. Ga. 2004); Manno v. Am. Gen. Fin. Co., 439 F.Supp.2d 418, 429 (E.D. Pa. 2006); Barnhill v. Bank of Am., N.A., 378 F.Supp.2d 696, 702 (D. S.C. 2005). Additionally, neither party has endorsed it. For these reasons, the Court will not adopt the "temporal" approach.

Under the "total preemption" approach, courts have held that Section 1861t(b)(1)(F) preempts all related state-law causes of action against furnishers, even willful violations of state common-law. See Himmelstein v. Comcast of the Dist., L.L.C., 931 F. Supp. 2d 48, 59 (D.D.C. 2013), citing Jaramillo v. Experian Info. Solutions, Inc., 155 F.Supp.2d 356, 362 (E.D. Pa. 2001) (holding that new preemption provision "clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting"). "The problem, of course, is that this approach would render section 1681h(e) utterly meaningless (essentially repealed by implication), a mode of statutory construction long disfavored by the Supreme Court." Meisel, 795 F.Supp.2d at 489, citing Tennessee Valley Authority v. Hill, 437 U.S.

153, 190, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." (quoting Morton v. Mancari, 417 U.S. 535, 550, 94 S.Ct. 2474 (1974)). "Repeals by implication are not favored. In the absence of a clear and manifest legislative intent to repeal, statutes that appear to conflict must be read, if possible, to give effect to each." Manno v. Am. Gen. Fin. Co., 439 F.Supp.2d 418, 424 (E.D. Pa. 2006), citing Watt v. Alaska, 451 U.S. 259, 267, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981). ("[T]o imply Congress's intent to repeal a previously existing provision in the statute without a clear statement in the amendment to that effect is an unwieldy act of legislation that this court ought not and will not undertake." Johnson v. Citimortgage, Inc., 351 F.Supp.2d 1368, 1374 (N.D. Ga. 2004). Courts have been skeptical to adopt the "total preemption" approach because they feel it would be tantamount to legislating from the bench. For these reasons, the Court does not adopt the "total preemption" approach for its analysis.

Also persuasive in the Court's decision to reject the "total preemption" approach is the inability of Midland to offer any relevant authority within the Fifth Circuit that adopts the "total preemption" approach to preempt state common-law claims.[5] In its memorandum in support, Midland cites to Floyd, 848 F.Supp.2d at 641, Ayers v. Aurora Loan Servs., LLC, 787 F.Supp.2d 451, 457 (E.D. Tex. 2011), and Davis v. Wells Fargo Bank, N.A., 976 F.Supp.2d 870, 883 (S.D. Tex. 2013), on reconsideration, 2014 WL 585403 (S.D. Tex. 2014); however, none of these cases offer any support that all state common-law claims are preempted under Section 1681t(b)(1)(F). See Record Document

---

[5] The Court, likewise, could not find any case within the Fifth Circuit adopting the "total preemption" approach to preempt state common-law claims.

8-1 at 10. The court in <u>Floyd</u>, analyzing the interplay of Section 1681h(e) and Section 1681t(b)(1)(F) to determine whether the plaintiff's state-law defamation claim was preempted, actually disregarded the "total preemption" approach, stating the Fifth Circuit's ruling in <u>Young</u>, 294 F.3d at 638, "may suggest the second (statutory) or third (temporal) approach." <u>Floyd</u>, 848 F.Supp.2d at 644. In <u>Ayers</u>, the question was whether Section 1681t(b)(1)(F) preempted the plaintiff's claim under the Texas Debt Collection Act, a statutory law. See <u>Ayers</u>, 787 F.Supp.2d at 457. Thus, Section 1681h(e) was never discussed and the case is easily distinguishable.[6] In <u>Davis</u>, the court stated, [A] state-law claim based on a defendant's conduct in furnishing inaccurate information to a consumer reporting agency is preempted by the FCRA." <u>Davis</u>, 976 F. Supp. 2d at 883. However, this statement was merely dicta, and the court performed no analysis as it found the plaintiff's complaint did not base any liability under Section 1681s—2. See id. The Court acknowledges that the Second Circuit and Seventh Circuit[7] have adopted the "total preemption" approach, but notes their decisions are not binding and offer little persuasion in light of the Fifth Circuit's rulings in <u>Young</u> and <u>Morris</u>, discussed <u>infra</u>.

The "statutory" approach construes Section 1861t(b)(1)(F) narrowly and holds that Congress intended the new FCRA provision's preemption of "the laws of any state" to preempt only state statutes, and construes Section 1681h(e) as a federal defense to state common-law claims not alleged with malice or willful intent.[8] See <u>Meisel</u>, 795 F.Supp.2d.

---

[6] Midland also cited <u>Garza v. Sallie Mae, Inc.</u>, 2010 WL 3784197, *5 (W.D. Tex. Sept. 21, 2010), in its reply memorandum; however, it too is easily distinguishable since the ruling preempts the plaintiff's claims under the Texas Debt Collection Act. See Record Document 24 at 9.

[7] <u>Macpherson v. JPMorgan Chase Bank, N.A.</u>, 665 F.3d 45, 46 (2d Cir. 2011); <u>Purcell</u>, 659 F.3d 622 (7th Cir. 2011).

[8] The Seventh Circuit in <u>Purcell v. Bank of Am.</u>, 659 F.3d 622, 623 (7th Cir. 2011), critiqued the statutory approach, holding that approach's interpretation of the word "laws" in Section 1681t(b)(1)(F) to preempt state statutes only was rejected by the Supreme Court when it overruled <u>Swift v. Tyson</u>, 41 U.S. 1 (1842) in <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 58 S.Ct. 817 (1938). The Seventh Circuit held Section

at 490, <u>citing</u> <u>Carlson v. Trans Union LLC</u>, 259 F.Supp.2d 517, 521 (N.D. Tex. 2003) ("[Section] 1681h(e) applies only to torts, while § 1681t(b)(1)(F) applies only to state statutory regulation."). Although the Fifth Circuit has not addressed the preemption language of Section 1681t(b)(1)(F) directly, its rulings in <u>Young</u>, 294 F.3d at 638, and <u>Morris v. Equifax Information Services, LLC</u>, 457 F.3d 460, 471-72 (5th Cir. 2006) appear to suggest the Fifth Circuit leans in favor of the "statutory" approach. <u>See</u> <u>Pachecano v. JPMorgan Chase Bank Nat. Ass'n</u>, 2013 WL 4520530, *6 (W.D. Tex. 2013) ("At least one district court has noted that the Fifth Circuit may have implicitly adopted the 'statutory' approach.") (<u>citing</u> <u>Meisel</u>, 795 F.Supp.2d at 488).

In <u>Young</u>, the Fifth Circuit affirmed summary judgment in favor of the defendant on the plaintiff's state law tort claims because the plaintiff failed to provide any evidence that the defendant "reported information with malice or willful intent toward him." <u>Young</u>, 294 F.3d at 638. In <u>Morris</u>, the Fifth Circuit affirmed summary judgment in favor of the defendant on the plaintiff's Texas libel claim where the plaintiff presented no evidence that the defendant acted with malice. <u>See</u> <u>Morris</u>, 457 F.3d at 471-72. As the court in <u>Meisel</u> concluded, <u>Young</u> and <u>Morris</u> "suggest that the Fifth Circuit continues to recognize the independent force of section 1681h(e), and the exception to preemption provided therein, notwithstanding the broader preemption provision of section 1681t(b) (1)(F)." <u>Meisel</u>, 795 F.Supp.2d at 488. The Court agrees with <u>Meisel</u> and <u>Carlson</u> and believes the "statutory" approach is the best of the three approaches and will adopt it for its analysis.

---

1681t(b)(1)(F)'s reference to "laws" "comprises all sources of legal legal rules, including judicial opinions." <u>See id.</u>

Here, James asserts claims under state law against Midland for negligence, defamation, invasion of privacy, and negligent or intentional infliction of emotional distress – with willful intent. See Record Document 1-1 at 11-12. James has sufficiently pled willful intent, discussed supra, therefore his claims are saved from preemption under Section 1681h(e). Additionally, under the "statutory" approach, his state common-law claims are not included in the preemption provision of Section 1681t(b)(1)(F). Therefore, James' state-law claims for negligence, defamation, invasion of privacy, and negligent or intentional infliction of emotional distress are not preempted by the FCRA and survive Midland's Motion to Dismiss.

However, as Midland asserts, James' state-law claims are all subject to the one-year prescriptive period for delictual claims in Louisiana. See La. Civ. Code Art. 3492. Thus, Midland claims the state-law claims based on actions prior to March 1, 2015 have prescribed. See Record Document 8-1 at 13. James argues the Court cannot analyze prescription since the Court has yet "to determine which states' laws would be applied to the several state law theories advanced by [P]laintiff." Record Document 18 at 18. Alternatively, James contends that none of his state-law claims are "clearly prescribed" on the face of the petition, since "Louisiana's liberative prescription statute provides tolling and discovery exceptions." Id.

James' "conflict of law" argument is incorrect. He filed his claims in Louisiana state court. See Record Document 1-1. "A federal court applies the conflict of law rules of the state in which it sits." Brookshire Bros. Holdings, Inc. v. Total Containment, Inc., 2006 U.S. Dist. Lexis 62576 (W.D. La. 2006). Louisiana's conflicts statute, in turn, provides: "When the substantive law of another state would be applicable to the merits of an action

brought in this state, the prescription and preemption law of this state applies…." La. Civ. Code Art. 3549(B). Moreover, because Louisiana courts view prescriptive periods as procedural in nature, to which the law of the forum applies, "Louisiana law regarding prescriptive periods applies to cases filed in this state, even where the substantive law of another state may govern the underlying substantive issues." AGEM Mgmt. Servs., LLC v. First Tenn. Bank Nat'l Ass'n, 942 F. Supp. 2d 611, 618 (E.D. La. 2013). Therefore, even if another state's substantive law were applicable to his claims, which James has failed to allege, this Court would still be obligated to apply Louisiana's one-year prescriptive period. Accordingly, James' argument has no merit, and Louisiana's one-year prescriptive period applies. The Court will now address whether the state-law claims have prescribed.

Similar to the federal standard, "the (Louisiana) prescriptive period begins to run when the plaintiff has actual knowledge or constructive notice of the alleged tortious act." Batiste v. Island Records, Inc., 179 F.3d 217, 225 (5th Cir. 1999). "When prescription is evident on the fact of the pleadings, however, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription …."[9] AGEM Mgmt. Servs., LLC, 942 F.Supp.2d at 619. Louisiana courts created the doctrine of *contra non valentem* as an exception to the general rules of prescription. See Bouterie v. Crane, 616 So.2d 657 (La. 1993). There are four factual situations in which *contra non valentem* prevents the running of the prescriptive period:

> (1) when a legal cause prevented the courts or court officers from taking cognizance of or acting on the plaintiff's action; (2) when a condition coupled with a contract or connected with the proceedings prevented the plaintiff from suing or acting; (3) when the defendant himself has done some act to

---

[9] James filed suit on March 1, 2016. See Record Document 1-1. To the extent his state-law claims are based on Midland's actions prior to March 1, 2015, his claims have clearly prescribed.

prevent the plaintiff from availing himself of his cause of action; or (4) when the cause of action is neither known nor reasonably knowable by the plaintiff even though the plaintiff's ignorance was not induced by the defendant.

Dugas v. City of Ville Platte, 2017 WL 6521660, *6 (W.D. La. 2017), report and recommendation adopted, 2017 WL 6521148 (W.D. La. 2017), citing Marin v. Exxon Mobil Corp., 2009-2368 (La. 10/19/10), 48 So.3d 234, 245.

The Court's equitable tolling analysis, discussed supra, is applicable here. Considering the facts alleged in the petition are true, it is plausible that Midland misled James into believing it had terminated its collection activities when in reality it had not; therefore, the third contra non valentam exception is triggered. Accordingly, James has sufficiently shown at the Rule 12(b)(6) stage that an exception to prescription may plausibly apply. The Court will not dismiss James' state-law claims on this basis at this time.

## CONCLUSION

For the reasons discussed supra, Midland's "Motion to Dismiss" (Record Document 8) is **GRANTED IN PART** and **DENIED IN PART**. Midland's Motion to Dismiss James' FCRA claims based on Midland's alleged conduct prior to March 1, 2014 is **GRANTED**. However, Midland's Motion to Dismiss James' (1) FCRA claims arising after April 1, 2014, (2) FDCPA claims and (3) state law claims for negligence, defamation, invasion of privacy, and negligent or intentional infliction of emotional distress is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 28th day of June, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT